# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>McNEILL PROPERTIES V, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 16-14944 (JKF) |
| In re:<br><br>McNEILL GROUP, INC.,<br><br>Debtor. | Chapter 11<br><br>Case No. 16-14943 (JKF)<br>Joint Administration Pending<br><br>Hearing Date/Time: August 17, 2016 at 1:00 p.m.<br>Objection Deadline: August 12, 2016 at 5:00 p.m. |

## OBJECTION OF THE PROVIDENT BANK TO THE DEBTORS' FURTHER USE OF CASH COLLATERAL PURSUANT TO THE INTERIM ORDERS AUTHORIZING USE OF CASH COLLATERAL DATED JULY 18, 2016

The Provident Bank (the "Bank" or "Provident"), by and through its undersigned attorneys, McCarter & English, LLP, hereby objects to the Debtors McNeill Properties V, LLC and McNeill Group, Inc.'s[1] further use of cash collateral as approved by this Court's Interim Orders Authorizing Use of Cash Collateral dated July 18, 2016 (the "Interim Orders") entered in each respective case, and in support thereof states as follows:

### BACKGROUND

1.  The Debtors' businesses consist of the operations of five related entities with a common principal, Mr. Edward J. McNeill. Mr. McNeill is incapable of running these businesses at a profit, and admittedly cannot contribute any funds whatsoever to a reorganization. He has been trying without success for one or more years to address the financial

---

[1] The "McNeil V Debtors" are comprised of the pre-merger entities McNeill Properties V, LLC, Lawrenceville Gym, LLC and University Athletic Management, LLC and the "McNeil Group Inc. Debtors" are comprised of the pre-merger entities McNeill Group, Inc. and McNeill Properties III, LLC.

issues facing the businesses, has caused further harm to creditors during this time, and has no realistic plan to pay creditors. The significant pre-petition liabilities of the Debtors indicate a reorganization of McNeill Properties V, LLC ("Properties V") is not possible absent a sale of all assets. The Budget previously approved by this Court on an interim basis does not pay all post-petition obligations of the McNeill Properties V debtor. The first financial report prepared by the Debtor pursuant to this Court's Interim Orders reflects that McNeill Properties V has negative cash in the bank and does not fund payments for real estate taxes impairing Provident's collateral. For the foregoing reasons, and the reasons set forth below, cash collateral use should be strictly controlled.

The Obligations to Provident

2. Provident extended a series of secured business loans to Properties V and Lawrenceville Gym, LLC (the "Gym") aggregating approximately $10,000,000. Properties V is the fee owner of the real property where the Gym conducts its business. Provident received a blanket lien on all assets of the two entities. These entities were unable to satisfy their obligations to Provident, and a forbearance agreement was executed in March, 2015, under which new money was advanced, and University Athletic Management, LLC ("UAM"), McNeill Properties III, LLC ("Properties III") and McNeill Group, Inc. ("Group") became guarantors of all liabilities. The loans again went into default when the required payments could not be made.

3. As a result of the defaults, the Bank initiated a Civil Action in the Law Division of the Superior Court of New Jersey, Mercer County, styled <u>The Provident Bank v. McNeill Properties V, LLC et al.</u> at Docket No. MER-L-0029-16 (the "Law Division Action"). On March 22, 2016, Provident obtained a Final Judgment by default against all of the entities and against Mr. McNeill personally in the Law Division Action in the amount of $9,802,679.41

2

together with attorneys' fees, costs and interest to accrue which accrues on or after March 4, 2016 (the "Money Judgment").

4. Mr. McNeill has no apparent ability to pay any meaningful amount of the Money Judgment.

5. Provident believed that Mr. McNeill was receiving monies from the soon to be Debtors, and sought and obtained a Court Order in the Law Division Action (the "Law Division Order") prohibiting Properties V and the Gym from "directly or indirectly" making any payments, in the nature of salary, distribution, loans or transfers of any economic consideration in any form to Mr. McNeill. See Law Division Order, ¶4 (attached hereto as Exhibit A).

6. The Money Judgement was transferred to Buck County, Pennsylvania on May 24, 2016 and is docketed as a judgment in The Provident Bank v. McNeill Properties V, LLC *et al.* at Case No. 2016-03263 (the "PA Judgment"). Pursuant to 42 Pa.C.S. § 4303, the PA Judgment became a lien on all real and personal property of each of the Debtors and the pre-merger entities of Lawrenceville Gym, LLC, University Athletic Management, LLC, McNeill Properties III, LLC located within Bucks County, Pennsylvania.

7. Provident has filed Proofs of Claim is each bankruptcy case, setting forth the loans, the loan documents, the security and perfection of liens. See Bankruptcy Case No. 16-14944 at Claim No. 1; Bankruptcy Case No. 16-14943 at Claim No. 4.

The McNeill Group, Inc. Case

8. Provident has limited comments to the application filed by this Debtor. Although there are some details currently unknown, it appears that the Debtor is providing Mr. McNeill with a late model Mercedes. Simply stated, no cash collateral use should be permitted for use of a luxury automobile. It is also unclear if the apparently unlimited use of corporate American

Express cards, or personal American Express cards of Mr. McNeill which are reimbursed to him, is occurring in this case or the McNeill Properties V case. This expense needs to stop.

The McNeill Properties V Case

9. Besides the almost $10,000,000 owed to Provident, this Debtor is obligated to the State of New Jersey in the amount of approximately $194,000 for trust fund taxes and to the township for approximately $87,000 in unpaid real estate taxes. This is not as dire as the McNeill Group case, however, where that Debtor is in arrears to the Internal Revenue Service for $320,000 for unpaid trust fund taxes, to Pennsylvania for $14,500 for unpaid state sales taxes and $103,000 for unpaid real estate taxes. Mr. McNeill admitted during his recent 2004 examination that he used the trust fund taxes to pay other obligations, that there was not sufficient cash flow to pay real estate taxes, and the lack of cash flow to pay taxes dated back into 2014. All of these obligations were incurred while he was driving the Mercedes and using the American Express cards extensively.

10. McNeill Properties V and McNeill Group filed their respective Schedules of Assets and Liabilities and Statements of Financial Affairs on August 11, 2016. Those pleadings reflect that Mr. McNeill received almost $400,000 in the 12 months preceding the filing of the bankruptcies. See SOFA Exhibit 4-1 at docket no. 43-2 in Bankruptcy Case No. 16-114943; SOFA Exhibit 4-1 at docket no. 43-2 in Bankruptcy Case No. 16-14944. For the convenience of the Court, the specific pages from the Schedules are attached as Exhibit B hereto. While Mr. McNeill was not paying trust fund taxes or making payments to Provident he was receiving hundreds of thousands of dollars (and likely violating the New Jersey Law Division Order attached as Exhibit A).

11. McNeill Properties V may argue that its cash flow problems were exacerbated by a fire which disrupted the Gym operations in the Summer of 2014, thereby hurting gym memberships and revenue. One can easily say that the distributions to him exacerbated the cash flow problems, but nevertheless Mr. McNeill has admitted that the cash flow issues preceded the fire. Thus, pre-petition operations are a good measuring point for post petition projections and issues to avoid.

12. In the first cash collateral budget submitted to the Court for Properties V, $13,333.00 was budgeted for payment of real estate taxes during the week of August 5, 2016 towards an obligation of approximately $41,873.00 that became due on August 1, 2016. The Properties V Debtor must provide proof that it paid the August budgeted amount, as it is not reflected in the financial report attached as Exhibit C. The Debtor may argue that it does not need to pay any amounts attributable to pre-petition periods, but that argument would be misleading. The August 1 tax payment is for the period July 1, 2016 to September 30, 2016. Even if the Debtor excludes the pre-petition period of July 1 to the July 12 filing date, the post-petition amount owed is still much greater than the budgeted amount.

13. Further, the November 2016 real estate tax liability of Properties V is again approximately $41,873.00. The budget provides for a monthly set aside of $13,333 for real estate taxes and there should be assurances that monies will be available in October and the first week of November to make the November 1, 2016 tax payment in full. The Properties V Debtor should not be permitted to continue its past practice of not making full real estate tax payments, further impairing Provident's collateral.

14. And the cash flow issues continue for this Debtor. The financial report at Exhibit C for the period July 12 to August 4, 2016 reflects cash on hand for the Properties V Debtor as of

5

July 29 of $11,045.  As indicated in that report, however, $20,000 was transferred to the Debtor from the McNeill Group estate.  The similar financial report for the McNeill Group case, attached hereto as Exhibit D, reflects the $20,000 transfer was an error, and will be reversed.  Thus, if the transfer had not been made McNeill Properties V would have had a negative $8,000 balance in its bank account.  The new proposed Budgets for the period ending September 30, 2016 does not appear to provide for repayment of this $20,000.  To the extent it does not, the Budget should be adjusted so that the Court and parties in interest can have more accurate information.

15. It is too soon in the case to make a determination if monthly post-petition revenue can pay monthly post-petition expenses.  But already there is negative cash flow and failure to make required real estate tax payments.

16. It is not too early in this case to conclude that the McNeill Properties V case cannot reorganize absent a sale of all assets.  Pre-petition the Debtor could not pay its secured debt to Provident and obligations to taxing authorities. In his 2004 examination, Mr. McNeill outlined that since at least September, 2015, he has been looking for a new institutional lender, a new hard money lender, equity investors and purchasers, all without success, to address the financial delinquencies.  He has no money to contribute to a reorganization, as evidenced by his admission and the Money Judgment against him held by Provident.  A review of the requirements of §1129 of the Bankruptcy Code reflects that there is insufficient cash flow to pay current expenses plus required payments to Provident and taxing authorities.  There must be a sale of all assets to generate funds to pay creditors.

17. It also is not too early in the case to conclude that Mr. McNeill is an obstacle to a reorganization and a sale.  He has been the recipient of numerous insider transfers.  He has

6

ME1 23042403v.2

presided over operations where trust fund taxes and real estate taxes went unpaid, admittedly diverted by him. At his 2004 examination, he was shockingly unaware of important details related to the businesses. There have been many intercompany transfers which places him, and the two bankruptcy estates, in conflict. He benefits from continued control but the creditors suffer. If Mr. McNeill does not quickly move forward with a sale process, then a motion will have to be filed to have a Chapter 11 trustee do so.

## **LEGAL ARGUMENT**

18. In considering whether use of cash collateral should be granted, "the court should consider whether there is any reasonable chance of reorganization." In re Hari Ram, Inc., 507 B.R. 114, 125 (Bankr. M.D. Pa. 2014); accord In re Am. Sweeteners, Inc., 2000 WL 1010582, at *4 (Bankr. E.D. Pa. July 14, 2000). ("[b]efore examining the adequate protection offered to the creditor, the Court should consider whether there is any reasonable chance of reorganization, for if there be none, there is no point in jeopardizing the creditor's cash collateral").

19. The Court should also consider the extent of administrative expense that might be incurred, and the possible inability of the Debtor to satisfy those fees. Provident expressly disclaims any liability for claimed §506(c) surcharges. This proceeding is not for the benefit of Provident, it is for the benefit of Mr. McNeill. It is early in the case, but pre-petition Mr. McNeill was unable to find a financial solution and post-petition there is negative cash flow and failure to pay real estate taxes.

20. The Debtor seeks to use cash collateral through September 30, 2016. There must be shown an ability to make the full real estate tax payment of approximately $40,000.00 due November 1, 2016. The September line item for real estate taxes of $13,333 should be escrowed during the week budgeted. And while a full explanation is not required as part of their

7

applications for the continued use of cash collateral, the Debtor must be able to assure the Court that all post-petition obligations are being paid and provide an outline of a plan of reorganization.

21. No monies should be paid to Mr. McNeill. These cases are solely for his benefit. He was richly compensated pre-petition, instead of paying creditors. While the Court is making efforts to determine the course of these cases, Mr. McNeill should not be compensated to the prejudice of creditors.

22. For these reasons, the Debtors' use of cash collateral should be conditioned on providing a clearer picture as to where these bankruptcy cases are going. Until such time the use of cash collateral should be limited, tightly controlled and budgeted accordingly.

WHEREFORE, Provident respectfully requests that the Court deny the Debtors' use of cash collateral as proposed and for such other and further relief as the Court deems just and proper.

Dated: August 12, 2016

**MCCARTER & ENGLISH, LLP**

By: */s/ David B. Aaronson*
David B. Aaronson
1600 Market Street, Suite 3900
Philadelphia, PA 10103
Telephone: (215) 979-3816
Facsimile: (215) 988-4313
Email: daaronson@mccarter.com

-and-

Joseph Lubertazzi, Jr. (pro hac vice)
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 622-4444
Facsimile: (973) 624-7070
Email: jlubertazzi@mccarter.com

*Counsel to The Provident Bank*

## **CERTIFICATION OF SERVICE**

I, the undersigned, hereby certify under penalty of perjury that on August 12, 2016, I caused to be served in accordance with the Federal Rules Bankruptcy Procedure 8011, Local Rules of Bankruptcy and all applicable law, via the ECF system to the parties-in-interest who have appeared in this action, a true and correct copy of the foregoing Objection of Provident Bank to the Debtors' Further Use of Cash Collateral Pursuant to the Interim Orders Authorizing Use of Cash Collateral Dated July 18, 2016.

Dated: August 12, 2016

                                            */s/ David B. Aaronson*
                                            David B. Aaronson

ME1 23042403v.2